**TIMOTHY R. GARRISON**
California Bar No. 228105
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Tel: (619) 234-8467 ext. 3722 / Fax: (619) 687-2666
timothy_garrison@fd.org

Attorneys for MARTIN GONZALEZ-SANCHEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 07CR3400-JAH |
| Plaintiff, | Date: January 22, 2007<br>Time: 8:30 a.m. |
| v. | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |
| MARTIN GONZALEZ-SANCHEZ, | |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**[1]

The government asserts that, on November 4, 2007, at approximately 9:10 p.m., Mr. Gonzalez-Sanchez was found in the United States by Border Patrol agents.

An indictment was filed on December 19, 2007 charging Mr. Hernandez with Attempted Entry after Deportation. The indictment in the instant case was returned by the January 2007 grand jury. That grand jury was instructed by the Honorable Larry A. Burns, United States District Court Judge on

---

[1] The following statement of facts and any facts further cited in this motion are based on discovery provided by the government. Mr. Gonzalez in no way admits the truth of these facts nor their accuracy as cited in these motions. Further, he reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

07CR3400-JAH

1  January 11, 2007. *See Exhibit A-Partial Transcript.* Judge Burns' instructions deviate from the instructions
2  at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this
3  district in several ways.[2]

4        After repeatedly emphasizing to the grand jurors that probable cause determination was their
5  sole responsibility, *see Ex. A* at 3, 3-4, 5,[3] Judge Burns instructed the grand jurors that they were forbidden
6  "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should
7  be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you."
8  *See id.* at 8. The instructions go beyond that, however, and tell the grand jurors that, should "you disagree
9  with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting
10 even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence
11 may be insufficient.'" *See id.* at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict
12 because the grand jurors disagree with a proposed prosecution.

13       Immediately before limiting the grand jurors' powers in the way just described, Judge Burns
14 referred to an instance in the grand juror selection process in which he excused three potential jurors. *See*
15 *id.* at 8.    I've gone over this with a couple of people. You understood from the
        questions and answers that a couple of people were
16
17         excused, I think three in this case, because they could not adhere to the
        principle that I'm about to tell you.
18 *Id.* That "principle" was Judge Burns' discussion of the grand jurors' inability to give effect to their
19 disagreement with Congress. *See id.* at 8-9.[4] Thus, Judge Burns not only instructed the grand jurors on his
20 view of their discretion; he enforced that view on pain of being excused from service as a grand juror.

21       In addition to his instructions on the authority to choose not to indict, Judge Burns also

22

23    [2] *See, e.g.*, *United States v. Cortez-Rivera*, 454 F.3d 1038 (9th Cir. 2006); *United States v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir.) (en banc), *cert. denied*, 126 S. Ct. 736 (2005) (*Navarro-Vargas II*); *United*
24 *States v. Navarro-Vargas*, 367 F.3d 896 (9th Cir. 2004)(*Navarro-Vargas I*); *United States v. Marcucci*, 299 F.3d 1156 (9th Cir. 2002) (per curiam). Having actually read the 2007 instructions, Mr. Orozco now believes
25 that those cases do not permit the excesses here.

26    [3] *See also id.* at 20 ("You're all about probable cause.").

27    [4] This Court should order that the grand jury selection transcript be prepared. Because Fed.R.Crim.P. 6 permits challenges to grand jurors by the parties, the selection process cannot be secret. At
28 any rate, this Court should also order disclosure under rule 6(e).

1  assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable

2  cause. *See id.* at 20.[5]

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.*

7  *Id.* (emphasis added).[6] The district court later returned to the notion of the prosecutors and their duties,

8  advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will

9  be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." *See id.* at 27.

10  An indictment was filed on September 5, 2007 charging Mr. Gonzalez-Sanchez with Deported Alien Found

11  in the United States.   These motions follow.

## II.

### THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS.*

**A.**     ***Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of the Grand Jury.**

17      The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions

18  given to grand jurors in the Southern District of California. *See Navarro-Vargas II*, 408 F.3d 1184. While

19  the Ninth Circuit has thus far (narrowly) rejected such challenges, it has, in the course of adopting a highly

20  formalistic approach[7] to the problems posed by the instructions, endorsed many of the substantive arguments

21  raised by the defendants in those cases.  The district court's instructions cannot be reconciled with the role

22  of the grand jury as set forth in *Navarro-Vargas II*.

---

[5]   These instructions were provided in the midst of several comments that praised the United States attorney's office and prosecutors in general.

[6]   The "in most instances" language suggests that there may be some limit on this principle.

[7]  *See Navarro-Vargas II*, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").

07CR3400-JAH

-3-

1    For instance, with respect to the grand jury's relationship with the prosecution, the *Navarro-Vargas II* majority acknowledges that the two institutions perform similar functions: "'the public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury.'" *Navarro-Vargas II*, 408 F.3d at 1200 (quoting *Butz v. Economou*, 438 U.S. 478, 510 (1978)). *Accord Navarro-Vargas I*, 367 F.3d at 900 (Kozinski, J., dissenting) (The grand jury's discretion in this regard "is most accurately described as prosecutorial." ). *See also Navarro-Vargas II*, 408 F.3d at 1213 (Hawkins, J., dissenting). It recognizes that the prosecutor is not obligated to proceed on any indictment or presentment returned by a grand jury, *id.*, but also that "the grand jury has no obligation to prepare a presentment or to return an indictment drafted by the prosecutor." *Id. See* Niki Kuckes, *The Democratic Prosecutor: Explaining the Constitutional Function of the Federal Grand Jury*, 94 Geo. L.J. 1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute of grand jury review from the perspective of those who insisted that a grand jury clause be included in the Bill of Rights'") (quoting Wayne LaFave et al., *Criminal Procedure* § 15.2(g) (2d ed. 1999)).

Indeed, the *Navarro-Vargas II* majority agrees that the grand jury possesses all the attributes set forth in *Vasquez v. Hillery*, 474 U.S. 254 (1986). *See id.*

> The grand jury thus determines not only whether probable cause exists, but also whether to "charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a non-capital offense -- all on the basis of the same facts. And, significantly, the grand jury may refuse to return an indictment even "'where a conviction can be obtained.'"

*Id.* (quoting *Vasquez*, 474 U.S. at 263). The Supreme Court has itself reaffirmed *Vasquez*'s description of the grand jury's attributes in *Campbell v. Louisiana*, 523 U.S. 392 (1998), noting that the grand jury "controls not only the initial decision to indict, but also significant questions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime." *Id.* at 399 (citing *Vasquez*, 474 U.S. at 263).

Judge Hawkins notes that the *Navarro-Vargas II* majority accepts the major premise of *Vasquez*: "the majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause that this individual has committed a crime." *See id.* at 1214 (Hawkins, J. dissenting). *Accord Navarro-Vargas I*, 367 F.3d at 899 (Kozinski, J., dissenting);

*Marcucci*, 299 F.3d at 1166-73 (Hawkins, J., dissenting). In short, the grand jurors' prerogative not to indict enjoys strong support in the Ninth Circuit. But not in Judge Burns' instructions.

**B.      The Instructions Forbid the Exercise of Grand Jury Discretion Established in Both *Vasquez* and *Navarro-Vargas II*.**

The *Navarro-Vargas II* majority found that the instruction in that case "leave[s] room for the grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous decision in *Marcucci*. *Marcucci* reasoned that the instructions do not mandate that grand jurors indict upon every finding of probable cause because the term "should" may mean "what is probable or expected." 299 F.3d at 1164 (citation omitted). That reading of the term "should" makes no sense in context, as Judge Hawkins ably pointed out. *See Navarro-Vargas II*, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence."). *See also id.* ("The 'word' should is used to express a duty [or] obligation.") (quoting *The Oxford American Diction and Language Guide* 1579 (1999) (brackets in original)).

The debate about what the word "should" means is irrelevant here; the instructions here make no such fine distinction. The grand jury instructions make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient'...." *See* Ex. A at 8-9. Thus, the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution. No grand juror would read this language as instructing, or even allowing, him or her to assess "the need to indict." *Vasquez*, 474 U.S. at 264.

Nor does the *Navarro-Vargas II* majority's faith in the structure of the grand jury a cure for the instructions excesses. The *Navarro-Vargas II* majority attributes "[t]he grand jury's discretion -- its independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of its decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it independent." *Id.* at 1202 (emphases in the original).

1     Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the 'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and unreviewability of many of its decisions -- sufficiently protects that power." *See id.* at 1214 (Hawkins, J., dissenting). The flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond making a probable cause determination ... unconstitutionally undermines the very structural protections that the majority believes save[] the instruction." *Id.* After all, it is an "'almost invariable assumption of the law that jurors follow their instructions.'" *Id.* (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)). If that "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described in *Vasquez*. Indeed, "there is something supremely cynical about saying that it is fine to give jurors erroneous instructions because nothing will happen if they disobey them." *Id.*

    In setting forth Judge Hawkins' views, Mr. Oliva-Reyes understands that this Court may not adopt them solely because the reasoning that supports them is so much more persuasive than the majority's sophistry. Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

    Here, again, the question is not an obscure interpretation of the word "should", but an absolute ban on the right to refuse to indict that directly conflicts with the recognition of that right in *Vasquez*, *Campbell*, and both *Navarro-Vargas II* opinions. *Navarro-Vargas II* is distinguishable on that basis, but not only that.

    Judge Burns did not limit himself to denying the grand jurors the power that *Vasquez* plainly states they enjoy. He also apparently excused prospective grand jurors who might have exercised that Fifth Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that] principle...." *See* Ex. A at 8. The structure of the grand jury and the secrecy of its deliberations cannot embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the conscience of the community. *See Navarro-Vargas II*, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a grand jury exercising its powers under *Vasquez* "serves ... to protect the accused from the other branches of government by acting as the 'conscience of the community.'") (quoting *Gaither v. United States*, 413 F.2d 1061, 1066 & n.6 (D.C. Cir. 1969)). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure," *United States v. Williams*, 504 U.S. 36, 50 (1992), and, here, Judge Burns has both fashioned his own rules and enforced them. The instructions here are therefore

structural error. *See Navarro-Vargas II*, 408 at 1216-17 (Hawkins, J., dissenting). The indictment must be dismissed.

**C.     The Instructions Conflict With *Williams*' Holding that there Is No Duty to Present Exculpatory Evidence to the Grand Jury.**

In *Williams*, the defendant, although conceding that it was not required by the Fifth Amendment, argued that the federal courts should exercise their supervisory power to order prosecutors to disclose exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth Amendment common law. *See* 504 U.S. at 45, 51. *Williams* held that "as a general matter at least, no such 'supervisory' judicial authority exists." *See id.* at 47. Indeed, although the supervisory power may provide the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions,'" *id.* at 46 (citation omitted), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first instance." *Id.* at 47 (emphasis added). The federal courts possess only "very limited" power "to fashion, on their own initiative, rules of grand jury procedure." *Id.* at 50. As a consequence, *Williams* rejected the defendant's claim, both as an exercise of supervisory power and as Fifth Amendment common law. *See id.* at 51-55.

Despite the holding in *Williams*, the instructions here assure the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. *See* Ex. A at 20.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.*

*Id.* (emphasis added). Moreover, the district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." *See id.* at 27.

This particular instruction has a devastating effect on the grand jury's protective powers,

particularly if it is not true. It begins by emphasizing the message that *Navarro-Vargas II* somehow concluded was not conveyed by the previous instruction: "You're all about probable cause." *See* Ex. A at 20. Thus, once again, the grand jury is reminded that they are limited to probable cause determinations (a reminder that was probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely would be excused if they rejected this limitation). The instruction goes on to tell the grand jurors that they should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor will present it. The end result, then, is that grand jurors should consider evidence that goes against probable cause, but, if none is presented by the government, they can presume that there is none. After all, "in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence." *See id.* Thus, if the exculpatory evidence existed, it necessarily would have been presented by the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you." *See id.* at 27.

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none.

Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation -- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

## III.

## MOTION TO COMPEL DISCOVERY

This request for discovery is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies" under United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989):

(1) Mr. Gonzalez-Sanchez 's Statements. The government must disclose: (1) copies of any written or recorded statements made by Mr. Gonzalez-Sanchez; (2) copies of any written record containing the substance of any statements made by Mr. Gonzalez-Sanchez; and (3) the substance of any statements made by Mr. Gonzalez-Sanchez that the government intends to use, for any purpose, at trial. See Fed. R. Crim. P. 16(a)(1)(A). **This request specifically includes a copy of any video or audio taped statement of Mr. Gonzalez-Sanchez and any rough notes inspectors took of his statements.**

(2) Mr. Gonzalez-Sanchez's Prior Record. Mr. Gonzalez-Sanchez requests disclosure of his prior record, if any exists. This includes Mr. Gonzalez-Sanchez 's record of contacts with the United States Border Patrol and/or the Immigration and Naturalization Service, even if those contacts did not result in prosecution. See Fed. R. Crim. P. 16(a)(1)(B).

(3) Arrest Reports, Notes and Dispatch Tapes. Mr. Gonzalez-Sanchez also specifically requests the government to turn over all arrest reports, notes, dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning. This request includes, but it is not limited to, any rough notes, photographs, records, reports, transcripts or other discoverable material. Fed. R. Crim. P. 16 (a)(1(A); Brady v. Maryland, 373 U.S. 83 (1983). The government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. Fed. R. Crim. P. 16 (a)(1)(B) and (c); Fed. R. Crim. P. 26.2 and 12(i).

(4) Documents and Tangible Objects. Mr. Gonzalez-Sanchez requests the opportunity to inspect, copy, and photograph all documents and tangible objects which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to him. See Fed. R. Crim. P. 16(a)(1)(c). **This request specifically includes Mr. Gonzalez-Sanchez' A-file and any existing deportation tapes.**

(5) Reports of Scientific Tests or Examinations. Mr. Gonzalez-Sanchez requests the reports

of all tests and examinations which are material to the preparation of the defense or are intended for use by the government at trial. See Fed. R. Crim. P. 16(a)(1)(D).

(6) Expert Witnesses. Mr. Gonzalez-Sanchez requests the name and qualifications of any person that the government intends to call as an expert witness. See Fed. R. Crim. P. 16(a)(1)(E). In addition, Mr. Rodriguez-Lopez requests written summaries describing the bases and reasons for the expert's opinions. See id. Mr. Rodriguez-Lopez requests that the Court order the government to notify the defense as such in a timely manner, so that a proper 104 (Kumho-Daubert) admissibility hearing can be conducted without unduly delaying the trial.

(7) Brady Material. Mr. Gonzalez-Sanchez requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt or punishment. See Brady v. Maryland, 373 U.S. 83 (1963). In addition, impeachment evidence falls within the definition of evidence favorable to the accused, and therefore Mr. Gonzalez-Sanchez requests disclosure of any impeachment evidence concerning any of the government's potential witnesses, including prior convictions and other evidence of criminal conduct. See United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976). In addition, Mr. Gonzalez-Sanchez requests any evidence tending to show that a prospective government witness: (i) is biased or prejudiced against the defendant; (ii) has a motive to falsify or distort his or her testimony; (iii) is unable to perceive, remember, communicate, or tell the truth; or (iv) has used narcotics or other controlled substances, or has been an alcoholic.

(8) Request for Preservation of Evidence. Mr. Gonzalez-Sanchez specifically requests the preservation of all physical or documentary evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case. (9) Any Proposed 404(b) Evidence. "[U]pon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Rule 404(b). Fed. R. Evid. 404(b). Mr. Gonzalez-Sanchez requests such notice three weeks before trial in order to allow for adequate trial preparation.

(10) Witness Addresses. Mr. Gonzalez-Sanchez's counsel requests access to the government's witnesses. Thus, counsel requests a witness list and contact phone numbers for each prospective government witness. Counsel also requests the names and contact numbers for witnesses to the

1  crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called
2  as government witnesses.

3  (11) <u>Jencks Act Material</u>.  Mr. Gonzalez-Sanchez requests production in advance of trial of
4  all material discoverable pursuant to the Jencks Act, 18 U.S.C. § 3500.  Advance production will avoid
5  needless delays at pretrial hearings and at trial.  This request includes any "rough" notes taken by the agents
6  in this case; these notes must be produced pursuant to 18 U.S.C. § 3500(e)(1).  This request also includes
7  production of transcripts of the testimony of any witness before the grand jury.  <u>See</u> 18 U.S.C. § 3500(e)(3).

8  (11a) <u>Original I-213s, G-166s, and I215Bs</u>.  Mr. Gonzalez-Sanchez requests that these reports
9  be produced.

10  (12) <u>Informants and Cooperating Witnesses</u>.  Mr. Gonzalez-Sanchez requests disclosure of
11  the name(s), address(es), and location(s) of all informants or cooperating witnesses used or to be used in this
12  case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise
13  participated in the crime charged against Mr. Gonzalez-Sanchez.  <u>Roviaro v. United States</u>, 353 U.S. 52, 61-
14  62 (1957).  The government must disclose any information derived from informants which exculpates or
15  tends to exculpate Mr. Gonzalez-Sanchez.  <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  The government must
16  disclose any information indicating bias on the part of any informant or cooperating witness.  <u>Id.</u>

17  (13) <u>Residual Request</u>.  Mr. Gonzalez-Sanchez  intends by this discovery motion to invoke
18  his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the
19  Constitution and laws of the United States.

**IV.**

**THIS COURT SHOULD ORDER PRESERVATION OF EVIDENCE**

22  Defendant requests the preservation of all physical evidence in this case.  This includes any
23  evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the
24  government (or its private contractors) in this case.  <u>United States v. Riley</u>, 189 F.3d 802, 806-808 (9th Cir.
25  1999).  This request includes, but is not limited to:  (1) the results of any fingerprint analysis; (2) the
26  defendant's personal effects; (3) the agents' rough notes; (4) any radio broadcast, if it is recorded; and (5)
27  any evidence seized from the defendant or any third party (i.e., material witnesses, co-defendants).  This
28  request also includes any material or percipient witnesses who might be deported or otherwise likely to

become unavailable (e.g. undocumented aliens and transients). Defendant requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order.

## V.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Defense counsel has received some discovery in this case, but defense counsel has not viewed the A-File and has not received any deportation tapes. Defense counsel therefore requests leave to file further motions.

## VI.

## CONCLUSION

For the reasons stated above, Mr. Gonzalez-Sanchez moves this Court to grant these motions.

Respectfully submitted,

Dated: January 22, 2008

/s/ *Timothy R. Garrison*
**TIMOTHY R. GARRISON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Gonzalez-Sanchez
timothy_garrison@fd.org