1  KAREN P. HEWITT
   United States Attorney
2  LUELLA M. CALDITO
   Assistant U.S. Attorney
3  California State Bar No. 215953
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-7035
   Luella.Caldito@usdoj.gov
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11 UNITED STATES OF AMERICA,      )   CRIM. CASE NO.    07CR3400-JAH
12                                )
                                  )   DATE:       January 22, 2008
13            Plaintiff,          )   TIME:       8:30 a.m.
                                  )
14                                )   GOVERNMENT'S RESPONSE IN OPPOSITION TO
                                  )   DEFENDANT'S MOTION TO:
15       v.                       )   (1)   COMPEL DISCOVERY AND PRESERVE
                                  )         EVIDENCE;
16 DAVID LOPEZ-MIRALES,           )   (2)   DISMISS   INDICTMENT   DUE   TO
      aka Martin Gonzalez-Sanchez )         MISINSTRUCTION OF THE GRAND JURY;
17                                )         AND
                                  )   (3)   GRANT  LEAVE  TO  FILE  FURTHER
18            Defendant.          )         MOTIONS
                                  )
19 _____)

20

21        COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

22 Karen P. Hewitt, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and

23 hereby files its Response in Opposition to Defendant's above-referenced Motions.  This Response is

24 based upon the files and records of this case.

25                              **I**

26                  **STATEMENT OF THE CASE**

27        On December 19, 2007, a federal grand jury in the Southern District of California returned a

28 an Indictment charging David Lopez-Mirales, also known as Martin Gonzalez-Sanchez ("Defendant")

   with Deported Alien Found In the United States, in violation of Title 8, United States Code, Section

1326.  The Indictment further alleged that Defendant had been removed from the United States subsequent to March 15, 2004.

## II

## STATEMENT OF FACTS

### A.     THE INSTANT OFFENSE

On August 10, 2007, at approximately 1:00 p.m., United States Border Patrol Agent Jake Schneeberger responded to a seismic intrusion device in an area known as "Big Cedar Canyon." This area is approximately 5 miles east of the Otay Mesa, California Port of Entry and 3 miles north of the United States/Mexico international border.  After hiking down to the bottom of the canyon (which took approximately one hour), Agent Schneeberger noticed several footprints.  Agent Schneeberger followed the footprints and twenty minutes later, he found four individuals hiding in a bush.  Agent Molly Rasmussen stayed with these four individuals while Agent Schneeberger continued to search the canyon.  Approximately thirty yards away, Agent Schneeberger observed a person's foot in a dense brush.  When he approached the brush, he observed three males hiding in the brush.

A field interview was conducted on all seven individuals.  All individuals, including Defendant, admitted that they were citizens and nationals of Mexico without any legal documentation to enter or remain in the United States.

Defendant was arrested and transported to the Brown Field Border Patrol Station for processing, where his fingerprints were entered into record check systems.  Defendant's identity was confirmed, along with his criminal and immigration histories.

At approximately 8:01 p.m., Defendant was advised of his Miranda rights and invoked his right to remain silent.

### B.     DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen of Mexico who was ordered deported by an Immigration Judge on or about May 17, 1990. Based on that order, Defendant was physically removed from the United States on May 18, 1990, through the Otay Mesa, California Port of Entry.  Defendant was also removed from the United States on November 9, 2005.

# III

# ARGUMENT

**A.    THE INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THE GRAND JURY INSTRUCTIONS WERE NOT IMPROPER**

 1. Introduction

  Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007.  Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

  In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures.  This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. ").  [Id.]  Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment.  The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice."  Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.  Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment by claiming that "a grand jury so badly misguided is no grand jury at all under the Fifth Amendment."  Concerning that kind of a contention Isgro stated:

[A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[1/]

The portions of the two relevant instructions approved in Navarro-Vargas were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[2/] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

---

[1/]     In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

[2/]     The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original).

4

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.  The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other."  Id.

2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you.  That's a judgment that congress makes.

> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient."  Instead, your obligation is to  contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[3/]

---

[3/]    The Partial Transcript is attached to Defendant's Motion to Dismiss as Exhibit A.  The Supplemental Transcript supplied herewith (Appendix 1) recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted, to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused.  Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17

1     Defendant acknowledges that in line with Navarro-Vargas, "Judge Burns instructed the grand

2     jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress;

3     that is, whether or not there should be a federal law or should not be a federal law designating certain

4     activity [as] criminal is not up to you.'"  Defendant notes, however, that  "[t]he instructions go beyond

5     that, however, and tell the grand jurors that, should 'you disagree with that judgment made by

6     Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think

7     that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence maybe

8     insufficient.'"  Defendant contends that this addition to the approved instruction, "flatly bars the grand

9     jury from declining to indict because the grand jurors disagree with a proposed prosecution."

10    Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when

11    he "referred to an instance in the grand juror selection process in which he excused three potential

12    jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion;

13    [but his] enforc[ing] that view on pain of being excused from service as a grand juror."[4/]

14    In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

15    instruction renders irrelevant the debate about what the word "should" means.  Defendant contends,

16    "the instruction flatly bars the grand jury from declining to indict because they disagree with a

17    proposed prosecution."   This argument mixes-up two of the holdings in Navarro-Vargas in the hope

18    they will blend into one.  They do not.

19    Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of

20    the criminal laws.  The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by

21    Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

22    expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact in

23    grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights,

24    and within the law, when he excused the three prospective grand jurors because of their expressed

25    inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind the

26    impaneled grand jurors that they could not question the wisdom of the laws.  As we will establish, this

27

28         [4/]     See Appendix 1.

6

1  reminder did not pressure the grand jurors to give up their discretion not to return an indictment.  Judge

2  Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict

3  because the grand jurors disagree with a proposed prosecution, because they do not say that.  That

4  aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with

5  in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the term "should" was germane.[5]

6  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").  This other instruction bestows

7  discretion on the grand jury not to indict.[6]  In finding this instruction constitutional, the court stated

8  in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its

9  independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other instruction

10  was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable

---

[5]    That instruction is not at issue here.  It read as follows:
[Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged.  To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[6]         The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.  The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.  As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the  grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in <u>United States  v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment." 408 F.3d at 1206.

belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 1) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted." Isgro, 974 F.2d at 1094.

8

3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
>
> . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[2/]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that

---

[2/] Just prior to this instruction, Judge Burns had informed the grand jurors that: [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause."  Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'"  From this lash-up Defendant contends:

> These <u>instructions create a presumption</u> that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily <u>presume</u> that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.
>
> The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[<u>See</u> Defendant's Motion to Dismiss at 8.]  (Emphasis added.)[8/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor

---

[8/]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. <u>See</u> <u>McClean v. Moran</u>, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing <u>Francis v. Franklin</u>, 471 U.S. 314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)). <u>See also</u> <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).

can be said to have a binding obligation to present it."[9/]  (emphasis added)).  See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."  (citing Williams) (emphasis added)).

However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[10/]  As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[11/]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

_____

[9/]    Note that in Williams the Court established:
Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury.  Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress,"  he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings."  504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.  974 F.2d at 1096.

[10/]    He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[11/]    The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

1  (Emphasis added.)[12]/  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of

2  Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the

3  policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a

4  subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."

5  (Emphasis added.)[13]/

6          The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed

7  guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.

8  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a

9  self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason

10  the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial"

11  exculpatory evidence exists.[14]/  If it does exist, as mandated by the USAM, the evidence should be

12  presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her

13  career destroyed by an Office of Professional Responsibility investigation.  Even if there is some

14  nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial"

15  exculpatory evidence, because there is none, the negative inference created thereby in the minds of the

16  _____

17  [12]/      See  www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.  Even
18  if Judge Burns did not know of this provision in the USAM while he was a member of the
    United States Attorney's Office, because of the accessability of the USAM on the internet, as the
19  District Judge overseeing the grand jury he certainly could determine the required duties of the United
    States Attorneys appearing before the grand jury from that source.

20  [13]/      See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly,
21  this new section does not bestow any procedural or substantive rights on defendants.

22      Under this policy, the government's disclosure will exceed its constitutional obligations. This
    expanded disclosure policy, however, does not create a general right of discovery in criminal cases.
23  Nor does it provide defendants with any additional rights or remedies.

24  USAM 9-5.001, ¶ "E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

25  [14]/      Recall Judge Burns also told the grand jurors that:

26  [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown
    trial, you're likely in most cases not to hear the other side of the story, if there is
27  another side to the story.

28  Partial transcript p. 19.

12

1    grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial"

2    exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[15/]

3    There is nothing wrong  in this scenario with a grand juror inferring from this state-of-affairs that there

4    is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the

5    evidence presented represents the universe of all available exculpatory evidence.

6        Further, just as the instruction language regarding the United States Attorney attacked in

7    Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution,"

8    408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

9    concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does

10   not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit

11   while reviewing Williams established that there is nothing in the Constitution which requires a

12   prosecutor to give the person under investigation the right to present anything  to the grand jury

13   (including his or her testimony or other exculpatory evidence), and the absence of that information

14   does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea that

15   there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM imposes a

16   duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is

17   irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the

18   self-imposed policy.[16/]  Therefore, while the "duty-bound" statement was an interesting tidbit of

19   information, it was  unnecessary in terms of advising the grand jurors of their rights and

20   responsibilities, and does not cast an unconstitutional pall upon the instructions which requires

21   dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by

22

23   _____

24   [15/]    Realistically, given "that the grand jury sits not to determine guilt or innocence, but to
     assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable
25   cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no
     competent defense attorney is going to preview the defendant's defense story prior to trial assuming
26   one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few
     and far between.

27   [16/]    The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
     failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her
28   job with the United States Attorney's Office for such a failure per the USAM.

13

1   Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by

2   Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").

3   But he also repeatedly "remind[ed] the grand jury that it stands between the government and the

4   accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this

5   context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally

6   defective requiring dismissal of this indictment or any indictment.

7          The "duty bound" statement constitutional contentions raised by Defendant do not indicate that

8   the "'structural protections of the grand jury have been so compromised as to render the proceedings

9   fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant

10  can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects

11  the fundamental fairness of the proceeding or if the independence of the grand jury is substantially

12  infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other

13  indictment, need not be dismissed.[17]

14  **B.   Motion to Compel Discovery**

15         The United States has and will continue to fully comply with its discovery obligations. To

16  date, the United States has produced 296 pages of discovery and a DVD copy of Defendant's post-

17  arrest statements. Additionally, on January 10, 2008, the United States provided defense counsel with

18  the opportunity to view Defendant's A-file. After reviewing the A-file, defense counsel requested a

19  copy of 238 pages within the A-file, which the United States produced as discovery to Defendant's

20  counsel on January 23, 2008. As of today, the United States has received no reciprocal discovery.

21  Counsel believes that all discovery disputes can be resolved amicably and informally in this case. In

22  view of the below-stated position of the United States concerning discovery, it is respectfully requested

23  that no orders compelling specific discovery by the United States be made at this time.

24

25

26         [17] On December 5, 2007, this Court issued a written order denying a similar motion to dismiss
    the Indictment in United States v. Diana Jimenez-Bermudez, Criminal Case. No. 07CR1372-JAH. In
27  addition to the arguments above, the Government requests that the Court adopt its same ruling in
    Criminal Case No. 07CR1372-JAH to deny Defendant's motion to dismiss the Indictment in the instant
28  motion. See Appendix 2.

14

1          1.      Defendant's Statements

2          The United States recognizes its obligation under Federal Rules of Criminal Procedure

3   ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant any written statements and the

4   substance of Defendant's oral statements.   The United States has produced all of Defendant's

5   statements, that are known to the undersigned Assistant U.S. Attorney at this time.  If the United States

6   discovers additional oral or written statements that require disclosure under the relevant Rules, such

7   statements will be promptly provided to Defendant.

8          The United States has already provided defense counsel with a DVD copy of Defendant's post-

9   arrest interview.

10         The United States has no objection to the preservation of the handwritten notes taken by any

11  of the Government's agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir.

12  1976) (agents must preserve their original notes of interviews of an accused or prospective government

13  witnesses).  However, the United States objects to providing Defendant with a copy of any rough notes

14  at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those

15  notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d

16  582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A)

17  does not require disclosure of an agent's notes even where there are "minor discrepancies" between

18  the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks

19  Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes

20  (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved

21  or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough

22  notes in this case do not constitute "statements" in accordance with the Jencks Act.  See United States

23  v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks

24  Act where notes were scattered and all the information contained in the notes was available in other

25  forms).  The notes are not Brady material because the notes do not present any material exculpatory

26  information, or any evidence favorable to Defendant that is material to guilt or punishment.  Brown,

27  303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to

28  the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71

15

1   (3d Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient).

2   If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the

3   Jencks Act, or <u>Brady</u>, the notes in question will be provided to Defendant.

4           2.      <u>Defendant's Prior Record</u>

5           The United States has provided Defendant with a copy of Defendant's known prior criminal

6   record under Rule 16(a)(1)(D).  <u>See</u> <u>United States v. Audelo-Sanchez</u>, 923 F.2d 129, 130 (9th Cir.

7   1990).  Should the United States determine that there are any additional documents pertaining to

8   Defendant's prior criminal record, those will promptly be provided to Defendant.

9           3.      <u>Arrest Reports, Notes and Dispatch Tapes</u>

10          The United States does not object to the request for arrest reports and has already produced to

11  Defendant all arrest reports known to the United States at this time.

12          The United States has no objection to the preservation of the handwritten notes taken by any

13  of the Government's agents and officers.  <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir.

14  1976) (agents must preserve their original notes of interviews of an accused or prospective government

15  witnesses).  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those

16  notes have been accurately reflected in a type-written report.  <u>See</u> <u>United States v. Brown</u>, 303 F.3d

17  582, 590 (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A)

18  does not require disclosure of an agent's notes even where there are "minor discrepancies" between

19  the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks

20  Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes

21  (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved

22  or adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough

23  notes in this case do not constitute "statements" in accordance with the Jencks Act.  <u>See</u> <u>United States</u>

24  <u>v. Ramirez</u>, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks

25  Act where notes were scattered and all the information contained in the notes was available in other

26  forms).  The notes are not <u>Brady</u> material because the notes do not present any material exculpatory

27  information, or any evidence favorable to Defendant that is material to guilt or punishment.  <u>Brown</u>,

28  303 F.3d at 595-96 (rough notes were not <u>Brady</u> material because the notes were neither favorable to

16

the defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient).

Nonetheless, although the United States is not required to produce the rough notes prior to trial in this case, the United States has already provided defense counsel with the rough notes on February 16, 2007.

The United States is unaware of a dispatch tape relating to this case at this time.

4.    <u>Documents and Tangible Objects</u>

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.  The United States, however, need not produce rebuttal evidence in advance of trial.  <u>See</u> <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

On January 10, 2008, the United States provided defense counsel with the opportunity to inspect the Defendant's A-file.  At the A-file viewing, Defendant requested a copy of 238 pages contained within the Defendant's A-file.  Those documents were copied and produced to defense counsel on January 23, 2008.  Additionally,  the United States will provide defense counsel with an audiotape recording of Defendant's deportation hearing as soon as the audiotape is made available to Government counsel.

5.    <u>Reports of Scientific Tests or Examinations</u>

The United States will provide Defendant with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

6.    <u>Expert Witnesses</u>

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

17

7.      Brady Material

The United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."  Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

8.      Request for Preservation of Evidence

The United States will preserve all evidence to which the Defendants are entitled pursuant to the relevant discovery rules.

9.      Any Proposed 404(b) Evidence

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

18

1    10.    Witnesses Addresses

2    The United States objects to this request as overbroad, unnecessary, and unsupported. Through

3    discovery, Defendant has the names of the officers and agents involved in her arrest. In addition, the

4    United States will provided Defendant with a list of witnesses it intends to call in its trial

5    memorandum. The United States objects to the request for the name and address of witnesses who will

6    not be called by the Government at trial as overbroad and irrelevant.

7    11.    Jencks Act Material

8    The United States will comply with its discovery obligations under the Jencks Act, Title 18,

9    United States Code, Section 3500, and as incorporated in Rule 26.2.

10    11a.    Original I-213s, G-166s and I-215Bs

11    These documents, to the extent of which exist in this case, have already been produced to

12    defense counsel.

13    12.    Informants and Cooperating Witnesses

14    At this time, the United States is not aware of any confidential informants or cooperating

15    witnesses involved in this case. The Government must generally disclose the identity of informants

16    where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense.

17    Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this

18    case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to

19    determine whether disclosure of the informant's identity is required under Roviaro. See United States

20    v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines there is a

21    confidential informant somehow involved in this case, the United States will either disclose the identity

22    of the informant or submit the informant's identity to the Court for an in-chambers inspection.

23    13.    Residual Request

24    The United States has complied with Defendant's residual request for prompt compliance with

25    Defendant's discovery requests and will continue to do so.

26    **C.    Motion to Preserve Evidence**

27    The Government has no objection to the preservation of evidence for a reasonable time period.

28

19

1    **D.    Motion for Leave to File Further Motions**

2         The Government opposes this request unless the motion is based upon newly discovered

3    evidence not available to Defendant at the time of the motion hearing.

4                                                **IV**

5                                          **CONCLUSION**

6         For the foregoing reasons, the United States requests that Defendant's Motions be denied

7    where opposed.

8         DATED: February 25, 2008

9

10                                              Respectfully Submitted,

11                                              KAREN P. HEWITT
                                                United States Attorney
12
                                                /s/ Luella M. Caldito
13
                                                LUELLA M. CALDITO
14                                              Assistant U.S. Attorney
                                                Luella.Caldito@usdoj.gov
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              20

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07CR3400-JAH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| DAVID LOPEZ-MIRALES, | ) | |
| aka Martin Gonzalez-Sanchez, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of:

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; (2) DISMISS INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY; AND (3) GRANT LEAVE TO FILE FURTHER MOTIONS

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Tim Garrison, Esq., Federal Defenders of San Diego, Inc.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case: None.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 25, 2008.


/s/ Luella M. Caldito
LUELLA M. CALDITO

21