**JENNIFER L. COON**
California State Bar No. 203913
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: jennifer_coon@fd.org

Attorneys for Mr. Gonzalez-Sanchez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 07CR3400-JAH |
| Plaintiff, ) | DATE: April 7, 2008 |
| ) | TIME: 8:30 a.m. |
| v. ) | |
| ) | STATEMENT OF FACTS AND |
| MARTIN GONZALEZ-SANCHEZ, ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF MOTIONS |
| Defendant. ) | |

**I.**

**BACKGROUND**[1]

The government asserts that, on November 4, 2007, at approximately 1:00 p.m., Mr. Gonzalez-Sanchez was found in the United States by Border Patrol agents. The government alleges that, at that time, Border Patrol Agents Jake Schneeberger and Molly Rasmussen came into contact with Mr. Gonzalez-Sanchez in an area known as Big Cedar Canyon. The government further alleges that, in response to questioning regarding his citizenship and permission to legally enter the United States, Mr. Gonzalez-Sanchez made incriminating statements. Mr. Gonzalez-Sanchez was subsequently transported to the Brown Field border patrol station, where he invoked his *Miranda* rights. He was subsequently charged with one count of violating 8 U.S.C. § 1326(a) and (b) (illegal alien found in the United States after deportation).

---

[1] The following statement of facts and any facts further cited in this motion are based on discovery provided by the government. Mr. Gonzalez-Sanchez does not admit the truth or accuracy of these facts, and reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

## II.

## THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE

The indictment must be dismissed because the government has failed to properly allege all elements of the offense. "Two corollary purposes of an indictment are to ensure that the defendant is being prosecuted on the basis of facts presented to the grand jury and to allow the court to determine the sufficiency of the indictment." United States v. Lane, 765 F.2d 1376, 1380 (9th Cir. 1985). "To serve each of these functions, the indictment must allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged." United States v. Pernillo-Fuentes, 252 F.3d 1030, 1032 (9th Cir. 2001) (quoting Lane, 765 F.2d at 1380). Accordingly, "[a]n indictment's failure to recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw." United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).

Here, the indictment charges Mr. Gonzalez-Sanchez with being a previously-deported alien found in the United States in violation of 8 U.S.C. § 1326. The indictment, however, fails to allege elements necessary to convict Mr. Gonzalez-Sanchez of that offense: that Mr. Gonzalez-Sanchez knew he was in the United States, that he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he entered the United States voluntarily and free from official restraint. See, e.g., Nyrienda v. INS, 279 F.3d 620, 623 (8th Cir. 2002) (setting forth the components of an entry under the immigration law); United States v. Cruz-Escoto, 476 F.3d 1081, 1085 (9th Cir. 2007) (physical presence is not sufficient to sustain conviction for "found-in" § 1326 offense; government must also prove that the defendant entered the United States free from official restraint); United States v. Ayala, 35 F.3d 423, 426 (9th Cir. 1994) (although found-in offense does not require specific intent, it does require that defendant "entered the United States voluntarily"); United States v. Cupa-Guillen, 34 F.3d 860, 863 (9th Cir. 1994) (found-in offense requires general intent to re-enter). Accordingly, the indictment must be dismissed. However, because the Ninth Circuit has decided many of these issues against Mr. Gonzalez-Sanchez, see, e.g., United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004), they are raised only briefly here for purposes of further appellate review.

//

1  Additionally, the indictment must be dismissed because it fails to allege both the dates of a previous
2 felony conviction and of a previous removal from the United States subsequent to that conviction.  The
3 statutory maximum for violation of 8 U.S.C. § 1326(a) is two years of imprisonment.  Pursuant to 8 U.S.C.
4 § 1326(b), however, a higher statutory maximum may apply if the alien was removed subsequent to certain
5 predicate crimes.  In <u>United States v. Salazar-Lopez</u>, 506 F.3d 748, 751-52 (9th Cir. 2007), the Ninth Circuit
6 held that an allegation in the indictment that the defendant "had been removed on a specific, post-conviction
7 date" is "required" in order to trigger the enhanced penalties under 8 U.S.C. § 1326(b).  Here, although the
8 indictment alleges a violation of 8 U.S.C. § 1326(b), it fails to allege either a specific removal date or the
9 temporal relationship between that removal and a prior conviction.  Rather, the indictment merely alleges that
10 Mr. Gonzalez-Sanchez was removed from the United States subsequent to one unassociated date, March 15,
11 2004.  Because the indictment fails to allege all of the necessary elements of the offense, it must be dismissed.

## III.

### THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE CHARGING STATUTE IS UNCONSTITUTIONAL

15  The Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), renders 8 U.S.C.
16 § 1326 unconstitutional.  Although this argument is foreclosed by current Ninth Circuit precedent, <u>see</u> <u>United</u>
17 <u>States v. Covian-Sandoval</u>, 462 F.2d 1090, 1096-97 (9th Cir. 2006), it is presented for purposes of further
18 appellate review.

19  In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), the Supreme Court held that in a § 1326
20 prosecution, the fact of a prior conviction need not be alleged in the indictment to increase a defendant's
21 maximum sentence.  Subsequently, however, in <u>Apprendi</u>, the Supreme Court held that any fact that increases
22 the statutory maximum sentence must be pled in the indictment, submitted to a jury, and proved beyond a
23 reasonable doubt.  <u>See</u> 530 U.S. at 476.  Section 1326 sets forth a scheme in which certain facts – prior
24 convictions – may drastically increase the applicable statutory maximum without being set forth in the
25 indictment or proven at trial.  According to the explicit mandate of <u>Apprendi</u>, this violates the Fifth and Sixth
26 Amendments.  To the extent that <u>Almendarez-Torres</u> holds that section 1326(b) was intended by Congress
27 to create sentencing enhancements for a judge to determine rather than elements of separate offenses, section
28 1326 is unconstitutional under <u>Apprendi</u>.

## IV.

## ANY STATEMENTS BY MR. GONZALEZ-SANCHEZ SHOULD BE SUPPRESSED

**A.     The Government Must Demonstrate Compliance With *Miranda*.**

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *see also Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (restating *Miranda* principles). "The ruling in *Miranda* prohibits 'custodial interrogation' unless the government first gives warnings to the [subject of the interrogation]." *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1046 (9th Cir. 1990). Once a person is in custody, *Miranda* warnings must be given prior to any interrogation. *See United States v. Estrada-Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his "critical" rights. *United States v. Bland*, 908 F.2d 471, 474 (9th Cir. 1990). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. *Miranda*, 384 U.S. at 474; *see also Edwards v. Arizona*, 451 U.S. 477, 484 (1981).

Here, there was no such *Miranda* advisement given in the field. Moreover, material produced by the government in discovery indicates that border patrol agents first confronted and interrogated Mr. Gonzalez-Sanchez regarding his immigration status at approximately 1:00 p.m. in an isolated area north of the international border. Reports characterize the area as containing brush, and do not indicate that other pedestrian or vehicle traffic was nearby. This interrogation preceded any form of administration of *Miranda* rights by seven hours, and when Mr. Gonzalez-Sanchez finally received the requisite *Miranda* warning, he invoked his rights. Because Mr. Gonzalez-Sanchez was "in custody" at the time of the field questioning, any statements that he made must be suppressed.

Custodial interrogation occurs when, under the totality of the circumstances, the questions asked by the authorities are reasonably likely to elicit an incriminating response from the subject. *See id.* Although questions that include routine biographical information usually do not trigger the safeguard of *Miranda v. Arizona*, 384 U.S. 436 (1996), "[t]hat exception is inapplicable . . . where the elicitation of information regarding immigration status is reasonably likely to inculpate the [subject]." *Id.*

//

In *United States v. Kim*, 292 F.3d 971, 973 (9th Cir. 2002),[2] the Ninth Circuit noted that the following factors are to be considered in deciding whether or not a police-dominated atmosphere exists: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* (citations omitted); *see also United States v. Estrada-Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980) (in context of custody at the border, "[t]he factors to be weighed are the language used to summon him, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the pressure exerted to detain him."). The Ninth Circuit also recognizes that "question[s] implying that [the agent] suspected [the defendant] of criminal activity" can give rise to a reasonable belief that one is not free to ignore the questions and leave. *United States v. Chavez-Valenzuela,* 268 F.3d 719, 725 (9th Cir. 2001), overruled on other grounds, *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007).[3]

It is not necessary that an individual be physically restrained in any fashion. In *United States v. Beraun-Panez*, 812 F.2d 578 (9th Cir. 1987), the Ninth Circuit found that an individual questioned out in an open field, who was neither held nor handcuffed nor told that he was under arrest, was nonetheless in custody for *Miranda* purposes. *Beraun-Panez* held that "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding." 812 F.2d at 580.[4]

Here, the criteria for a police-dominated atmosphere as articulated in *Kim* are clearly met. First, although the language used to summon Mr. Gonzalez-Sanchez is not precisely indicated in the reports, Agent Schneeberger was in full rough duty Border Patrol uniform and did clearly indicate that he was a law enforcement officer and that Mr. Gonzalez-Sanchez was in custody. The facts that Agent Morales was in

---

[2] In *Kim*, the Ninth Circuit found that a Korean woman who went to her own store, voluntarily, because an officer's visit prompted her to do so was in custody even though she was in familiar surroundings because the police "temporarily took over complete control of Kim's store creating a 'police-dominated atmosphere.'" 292 F.3d at 977. This combined with difficulty with English and isolation from family supported the finding that Kim did not willingly agree to submit to an encounter with the police. *Id.*

[3] *Chavez-Valenzuela* involved a roadside stop of a motorist on a public street, out in the open.

[4] The police confronted Beraun-Panez with his alienage, accused him of lying and kept him separated from his co-worker in a remote rural area. *Beraun-Panez*, 812 F.2d at 580.

uniform, confronting a pedestrian, in an isolated area with no means to escape, further substantiate this factor and enhance the reasonable belief that Mr. Gonzalez-Sanchez was not free to leave. Second, Mr. Gonzalez-Sanchez was confronted with evidence of guilt. He was apprehended in an isolated area, hiding in the brush, and immediately interrogated about his immigration status. Moreover, the agent's questioning bore on Mr. Gonzalez-Sanchez's alienage, which is an element of the charged offense, 8 U.S.C. § 1326. *See United States v. Meza-Soria*, 935 F.2d 166, 171 (9th Cir. 1991). This question in such a setting carried with it implicit suspicion of criminal activity. A person subjected to such questioning in such a situation would not reasonably feel free to leave, and thus is subject to custodial interrogation. *See Chavez-Valenzuela*, 268 F.3d at 725. Third, the physical surrounding of the interrogation was a remote area north of the international border. The reports do not mention any vehicular or pedestrian traffic, or any landmarks such as homes or businesses. The remaining factors, the length of the detention and the amount of pressure applied to Mr. Gonzalez-Sanchez, are unclear from the reports. But because Mr. Gonzalez-Sanchez was apprehended in a rural area, by a uniformed agent, and interrogated about elements of a criminal offense, his alleged statements must be suppressed.

In the context of an encounter between border patrol and an individual near the international border, any questioning regarding an individual's alienage falls under the rubric of custodial interrogation. Furthermore, because of the close relationship between civil and criminal immigration investigations, "[c]ivil as well as criminal interrogation of in-custody defendants by INS [agents] should generally be accompanied by the *Miranda* warnings." *United States v. Mata-Abundiz*, 717 F.2d 1277, 1279 (9th Cir. 1983).

In *United States v. Gonzalez-Sandoval*, 894 F.2d 1043 (9th Cir. 1990), the defendant appeared at a local police station to provide his state parole officer with a urine sample. *Id.* at 1046. A second parole officer accused Mr. Gonzalez-Sandoval of being a deported alien and called the Border Patrol. *Id.* The Border Patrol came to the station, and without warning him pursuant to *Miranda*, asked Mr. Gonzalez-Sandoval where he was born and whether he possessed documents to verify the legality of his presence in the United States. *Id.* The Border Patrol agents then took Mr. Gonzalez-Sandoval to the Calexico Border Patrol Station. Failing to administer the *Miranda* warnings a second time, the agents questioned Mr. Gonzalez-Sandoval about any alias he possessed. *Id.* The agents ran an INS record check against Mr. Gonzalez-Sandoval's name and alias, and found Mr. Gonzalez-Sandoval's prior immigration record. *Id.* The Ninth Circuit found that the district

court erred in failing to suppress the unwarned, prompted statements by Mr. Gonzalez-Sandoval about his name and alias. *Id.* at 1047.

In *United States v. Mata-Abundiz*, an INS agent visited the defendant in a state jail to obtain biographical information to determine the defendant's citizenship status. 717 F.2d at 1278. The agent knew about the state charges against Mr. Mata-Abundiz, and did not warn him pursuant to *Miranda* prior to obtaining the biographical data. *Id.* Afterwards, the agent made further inquiries at his office and within three hours returned to the jail to charge Mr. Mata-Abundiz with a federal immigration offense. *Id.* Despite the fact that the agent characterized his interrogation as pursuant to a civil investigation, the court held that the agent should have warned Mr. Mata-Abundiz as required by *Miranda* because the agent knew his interrogation could lead to federal charges against the defendant. *Id.* at 1278-1279.

Here, it is obvious that the information the agent elicited from Mr. Gonzalez-Sanchez regarding his citizenship and application for permission to enter was "reasonably likely to inculpate" him. The questions served no purpose other than inculpation. They are in fact two of the four elements that they government must prove to obtain a conviction for a violation of 8 U.S.C. § 1326. Moreover, it is undisputed that Mr. Gonzalez-Sanchez was not read his *Miranda* rights at that point, nor advised that his answers to the agent's questions could result in federal charges against him. Therefore, the statements must be suppressed.

**B.     Mr. Gonzalez-Sanchez's Statements Were Involuntary**.

Even when the procedural safeguards of *Miranda* have been satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded upon an involuntary confession. *Arizona v. Fulminante*, 499 U.S. 279 (1991); *Jackson v. Denno*, 378 U.S. 368, 387 (1964). The government bears the burden of proving that a confession is voluntary by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the totality of the circumstances must be considered. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

A confession is deemed involuntary if coerced by physical intimidation or psychological pressure. *Townsend v. Sain*, 372 U.S. 293, 307 (1963). "The test is whether the confession was 'extracted by any sort

of threats or violence, [or] obtained by *any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" Hutto v. Ross*, 429 U.S. 28, 30 (1976) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)). *Accord United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981). The government bears a heavy burden in demonstrating that a confession is voluntary and the finding of voluntariness "'must appear from the record with unmistakable clarity.'" *United States v. Davison*, 768 F.2d 1266, 1270 (11th Cir. 1985). Here, such a finding cannot be made.

**C.      This Court Should Conduct An Evidentiary Hearing.**

This Court should conduct an evidentiary hearing to determine whether Mr. Gonzalez-Sanchez's statements should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Mr. Gonzalez-Sanchez are voluntary. In addition, § 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Gonzalez-Sanchez understood the nature of the charges against him and understood his rights. Without evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. *See United States v. Prieto-Villa*, 910 F.2d 601, 606-610 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" *id.* at 610 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

## V.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

Defense counsel requests leave to file further motions and notices of defense based upon information gained in the discovery process.

//
//
//
//
//

# VI.

# **CONCLUSION**

For the foregoing reasons, Mr. Gonzalez-Sanchez respectfully requests that the Court grant the above motions.

Respectfully submitted,

DATED: March 24, 2008

/s/ *Jennifer L. Coon*
**JENNIFER L. COON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Gonzalez-Sanchez

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

    Courtesy Copy Court

    Assistant United States Attorney via ECF

Dated: March 24, 2008                         */s/ Jennifer L. Coon*
JENNIFER L. COON
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
e-mail: Jennifer_Coon@fd.org