1  **JENNIFER L. COON**
   California State Bar No. 203913
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: jennifer_coon@fd.org

5  Attorneys for Mr. Gonzalez-Sanchez

6

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10               **(HONORABLE JOHN A. HOUSTON)**

11 UNITED STATES OF AMERICA,        )    CASE NO. 07CR3400-JAH
                                    )
12          Plaintiff,              )    DATE:      May 19, 2008
                                    )    TIME:      11 a.m.
13 v.                              )
                                    )    STATEMENT OF FACTS AND
14 MARTIN GONZALEZ-SANCHEZ,        )    MEMORANDUM OF POINTS AND
                                    )    AUTHORITIES IN SUPPORT OF MOTIONS
15          Defendant.             )
   _____)

16

17                           I.

18                      **INTRODUCTION**

19        Mr. Gonzalez-Sanchez is charged by indictment with being a deported alien found in the United States

20 in violation of 8 U.S.C. § 1326.  This motion incorporates the facts included in the motions that Mr.

21 Gonzalez-Sanchez previously filed.

22                           II.

23        **THE COURT SHOULD COMPEL THE GOVERNMENT TO PROVE**
          **THE VALIDITY OF THE DEPORTATION TO THE JURY**

24

25        The Fifth and Sixth Amendments require that, "all facts necessary to constitute a statutory offense"

26 must be proven to the jury beyond a reasonable doubt.  Apprendi v. New Jersey, 530 U.S. 466, 483-84 (2000);

27 Id. at 499 (Scalia, J., concurring) (the right to jury trial "means that all the facts which must exist in order to

28 subject the defendant to a legally prescribed punishment must be found by the jury") (emphasis in original);

1  Id. at 499-500 (Thomas, J., concurring) ("due process requires that the jury find beyond a reasonable doubt

2  every fact necessary to constitute the crime"); In re Winship, 397 U.S. 358, 364 (1970) (same). In 1996,

3  Congress amended § 1326 adding the element of a lawful deportation.  See § 1326(d).  In prior cases

4  analyzing the elements of the offense, the Ninth Circuit had held that the lawfulness of a prior deportation

5  should not be submitted to the petit jury, because it was not an "element of the offense."  See United States

6  v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc); see also United States v. Mendoza-Lopez,

7  481 U.S. 828 (1987). The 1996 amendment -- adding the element of a valid deportation -- changed the statute,

8  overruling decisions relying on the fact that the deportation was not an element.  Thus, a lawful deportation

9  is an element of the offense, and, therefore, must be submitted to the petit jury.  Apprendi, 530 U.S. at 483-84.

10      Alvarado-Delgado had relied upon the Supreme Court's 1987 decision in United States v. Mendoza-

11  Lopez, 481 U.S. 828 (1987), to hold that the validity of the prior deportation is not an element of the offense

12  to be submitted to the jury. See Alavarado-Delgado, 98 F.3d at 493. In Mendoza-Lopez, the court analyzed

13  the then language of § 1326 which did not allow a collateral attack on the underlying deportation.[1]  However,

14  the statute was changed in 1996 when Congress added § 1326(d), authorizing collateral attacks on the

15  underlying deportation. Thus, a discarded version § 1326 formed the basis for both the Mendoza-Lopez  and

16  Alvarado-Delgado decisions. Due to the change to the statute, specifically adding an element under § 1326(d),

17  Alvarado-Delgado is no longer applicable.

18      Moreover, continuing developments in the Supreme Court's Fifth and Sixth Amendment jurisprudence

19  mandate that the element concerning the validity of the deportation be decided by the petit jury.  Under the

20  Fifth and Sixth Amendments, "all facts necessary to constitute a statutory offense" must be proven to the jury

21  beyond a reasonable doubt. Apprendi, 530 U.S. at 483-84; see also Blakely v. Washington, 524 U.S. 296

22  (2004). The validity of the prior deportation is a necessary element of a § 1326 crime. Thus, under Apprendi

23  and its progeny, a valid deportation must be proved to the jury.

24      The amended language in § 1326 coupled with Apprendi, establish that under the doctrine of

25  constitutional doubt, the validity of the deportation must now be proved to the jury. In United States v.

26  Buckland, 289 F.3d 558, 564-67 (9th Cir. 2002) (en banc), the Ninth Circuit, sitting en banc, faced a similar

27

28      [1] The Supreme Court nevertheless held that a § 1326 defendant could collaterally attack the
underlying deportation, but that the Due Process Clause, not the statutory language, afforded the
defendant that right.

1  question in the context of the federal drug distribution statute. Prior to <u>Apprendi</u>, the Ninth Circuit had held

2  that drug type and quantity under 21 U.S.C. § 841 did not have to be proved to the jury and instead were

3  merely facts to be determined by the judge. In <u>Buckland</u>, however, the Ninth Circuit overruled its prior

4  precedent, finding that the doctrine of constitutional doubt required it to reconsider its statutory construction

5  of § 841 and hold that drug type and quantity were questions for the jury to decide. <u>See Buckland</u>, 289 F.3d

6  at 564.  Like § 841, § 1326(d) does not specifically state whether the judge or the jury is to determine whether

7  the prior deportation is lawful. As a result, under the doctrine of constitutional doubt, § 1326(d)  should also

8  be construed as requiring a jury determination on this issue. Thus, due to the amendment to the statute, and

9  consistent with the Supreme Court's jurisprudence in <u>Apprendi</u>, a valid deportation is an element of the

10  offense that must be proved to the jury.

11                                                    **III.**

12  **THE COURT SHOULD EXCLUDE ADMISSION OF DOCUMENTS NOT YET PRODUCED IN
    DISCOVERY, AND SHOULD REQUIRE THE GOVERNMENT TO COMPLY WITH THE**

13  **NOTICE REQUIREMENTS OF RULE 16 (d)(2)**

14             Pursuant to Fed. R. Crim. Proc. 16(d)(2), Mr. Gonzalez-Sanchez requests that the Court prohibit the

15  introduction of any documents not yet produced in discovery. Additionally, pursuant to Rule 16(d)(2), Mr.

16  Gonzalez-Sanchez requests that the Court order the Government to provide him with prompt written notice

17  of its intention to use any discoverable evidence in its case-in-chief.

18                                                    **IV.**

19                        **THE COURT SHOULD REQUIRE THE GOVERNMENT
                            TO REDACT THE A-FILE DOCUMENTS**

20             The Government has yet to comply with Fed. R. Crim. P. 12(b)(4)'s notice requirement. Mr.

21  Gonzalez-Sanchez anticipates that the Government will nonetheless attempt to introduce several documents

22  from an A-file maintained by the Department of Homeland Security. If the Court is inclined to admit such

23  documents, Mr. Gonzalez-Sanchez requests that the Court order the Government to redact certain portions

24  of the documents such as: (1) any mention that Mr. Gonzalez-Sanchez was previously convicted of any crime,

25  including the listing of his address as any  penal institution, <u>see</u> Fed. R. Evid. 403 and 404(b); (2) any

26  reference to Mr. Gonzalez-Sanchez using an alias, or any mention that Gonzalez-Sanchez has used an alias,

27  <u>see</u> Fed. R. Evid. 403; and (3) any reference to Mr. Gonzalez-Sanchez as an "alien," because that is an issue

28  for the jury to decide.

**V**.

## THIS COURT SHOULD PRECLUDE TESTIMONY FROM GOVERNMENT WITNESSES REFERRING TO MR. GONZALEZ-SANCHEZ AS THE "ALIEN;

To convict Mr. Gonzalez-Sanchez, the Government must prove that he is an "alien." See 8 U.S.C. § 1326. "Alien" is a legal term that will be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); FED. R. EVID. 704(a). It is also a finding that the jury must make, and thus, no witness is permitted to opine that this element has been proved. See United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was "admitting the conspiracy" was improper because it required a legal conclusion).

The government is expected to call several witnesses from the immigration authorities, including the A-file custodian, border patrol agents, and detention enforcement officers. Because the government has accused Mr. Gonzalez-Sanchez of being an alien, it is anticipated that these witnesses will refer to Mr. Gonzalez-Sanchez as "the alien." If these witnesses testify that Mr. Gonzalez-Sanchez is an alien, it will create confusion among the jurors regarding this Court's instructions on the law and what the government has (or has not) proved, in violation of FED. R. EVID. 403. It will also subvert Mr. Gonzalez-Sanchez's right to a jury finding of every essential element guaranteed by the Fifth and Sixth Amendments. Thus, this Court should preclude the witnesses from referring to Mr. Gonzalez-Sanchez as "the alien."

**VI.**

## THIS COURT SHOULD REQUIRE THE GOVERNMENT TO PROVIDE INSPECTION OR PRODUCTION OF CERTIFIED DOCUMENTS

While Mr. Gonzalez-Sanchez objects to the introduction of any A-File documents, it is clear that no public record can be introduced unless certified. The defense has yet to receive copies of any alleged certifications. Typically these are not provided until the middle of trial. Defense counsel requests an opportunity to inspect any alleged certifications pre-trial so that any issues can be dealt with accordingly. The defense is happy to permit the government to inspect its certified documents, if any, pre-trial.

//

//

//

07CR3400-JAH

1

## VII.

2

### THIS COURT SHOULD PRECLUDE THE INTRODUCTION OF "MUG SHOTS" OF MR. GONZALEZ-SANCHEZ

3

4       Discovery documents provided in this case include some "mug shot"-style pictures of Mr. Gonzalez-

5    Sanchez taken while he was in custody. Because this is not an identity case, these pictures have no place at

6    this trial. Mr. Gonzalez-Sanchez does not dispute that he is the individual arrested in the instant case.

7    Accordingly, these pictures have no probative value. In contrast, however, their appearance automatically

8    places Mr. Gonzalez-Sanchez as a criminal in mind of the jury, and is not unlike forcing a defendant to wear

9    jail-issued clothing while in trial. Under FED. R. EVID. 403, these pictures are highly prejudicial and devoid

10   of probative value. They should be excluded from trial as a result.

11

## VIII.

12

### THIS COURT SHOULD PROHIBIT THE CERTIFICATE OF NONEXISTENCE OF RECORD AS INADMISSIBLE BECAUSE IT VIOLATES THE CONFRONTATION CLAUSE OF THE CONSTITUTION AND ALLOWS THE GOVERNMENT TO CIRCUMVENT ITS DISCOVERY OBLIGATIONS[2]

13

14

15       Mr. Gonzalez-Sanchez is expecting the government will try and introduce a Certificate of

16   Nonexistence of Record (hereinafter "CNER") to establish that Mr. Gonzalez-Sanchez did not obtain

17   permission for admission into the United States. This document is inadmissible because it violates the

18   Confrontation Clause and is an attempt to circumvent the government's discovery obligations.

19       The use of a CNER violates Mr. Gonzalez-Sanchez's Sixth Amendment Confrontation Clause right,

20   which "guarantees an opportunity for effective cross-examination . . . ." United States v. Lo, 231 F.3d 471

21   (9th Cir. 2000) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)). "Evidence may be admissible under

22   an exception to the hearsay rule and still violate the Confrontation Clause." United States v. Neff, 615 F.2d

23   1235, 1241 (9th Cir. 1980). The admission of a CNER deprives Mr. Gonzalez-Sanchez of the opportunity to

24   cross-examine the declarant on the competency of his or her investigation. This cross-examination is crucial,

25   as the government will likely rely entirely on this document to establish that particular element of the offense.

26       The Supreme Court's decision in Crawford v. Washington 541 U.S. 36 (2004), squarely held,

27

28       [2] Defense counsel recognizes that this Court may find that United States v. Cervantes-Flores, 421 F3d 825 (9th Cir. 2005), has decided this issue.  Nevertheless, Mr. Gonzalez-Sanchez wishes to preserve the issue for appeal.

1  pursuant to the Sixth Amendment, that pre-trial, testimonial statements may not be admitted against a

2  defendant at trial where the defendant has not had a chance to cross examine the declarant.  Crawford, 541

3  U.S. at 68. This is true even where the statements fall within a "firmly rooted hearsay exception" or bear

4  "particularized guarantees of trustworthiness." Id. at 60. (Crawford explicitly overturns Ohio v. Roberts, 448

5  U.S. 56 (1980)). The Supreme Court noted the broad class of statements that constitute "testimonial"

6  evidence:

7         Various formulations of this core class of "testimonial" statements exist: *ex parte* in-court
        testimony or its functional equivalent — that is, material such as affidavits, custodial
8         examinations, prior testimony that the defendant was unable to cross-examine, or similar
        pretrial statements that declarants would reasonably expect to be used prosecutorially . . .
9         extrajudicial statements . . . contained in formalized testimonial materials, such as
        affidavits, depositions, prior testimony, or confessions, . . . statements that were made
10        under circumstances which would lead an objective witness reasonably to believe that the
        statement would be available for use at a later trial. . . .  These formulations all share a
11        common nucleus and then define the Clause's coverage at various levels of abstraction,
        around it.  Regardless of the precise articulation, some statements qualify under any
12        definition — for example *ex parte* testimony at a preliminary hearing.  [¶]  Statements
        taken by police officers in the course of interrogations are also testimonial under even a
13        narrow standard.

14  Id. at 51-2 (internal citations and quotations omitted).

15        The Court criticized admitting testimonial evidence (that is not tested by cross-examination) as

16  follows:

17        Where testimonial statements are involved, we do not think the Framers meant to leave the
        Sixth Amendment's protection to the vagaries of the rules of evidence, much less to
18        amorphous notions of "reliability." . . . [¶] The Roberts test allows a jury to hear evidence,
        untested by the adversary process, based on a mere judicial determination of reliability.
19        It thus replaces the constitutionally prescribed method of assessing reliability [i.e., cross-
        examination] with a wholly foreign one.

20

21  Id. at 61-2.

22        Thus, the Confrontation Clause does not permit testimonial statements to be admitted at trial without

23  the "constitutionally prescribed method of determining reliability," *i.e.*, confrontation by means of meaningful

24  cross-examination.  Id.  In other words, [w]here testimonial evidence is at issue . . . the Sixth Amendment

25  demands . . . unavailability [of the declarant] and a prior opportunity for cross-examination."  Id. at 68.  In

26  this case, if the government is allowed to enter the CNER into evidence, Mr. Gonzalez-Sanchez will not be

27  given an opportunity to cross-examine the declarant or the author of the CNER. As such, if declarant is

28

1  unavailable for trial, any statements taken from her are inadmissible under the plain reading of the Sixth

2  Amendment and the holding of Crawford.

3         The government may attempt to rely on United States v. Mateo-Mendez, 215 F.3d 1039 (9th Cir.

4  2000), which affirmed a district court's admission of a CNER, addressing hearsay and authentication issues

5  but not Confrontation Clause violation. But the Ninth Circuit specifically did not reach the Confrontation

6  Clause issue in Mateo-Mendez as it was not briefed or argued. Mateo-Mendez, 215 F.3d at 1043. The

7  government may also attempt to rely on United States v. Loyola-Dominguez, in arguing for the admission

8  of the CNER. See 125 F.3d 1315, 1317 (9th Cir. 1997). The validity of this pre-Crawford Ninth Circuit

9  precedent regarding CNERs is clearly in question.

10        Finally, the failure to have this witness testify at trial and the subsequent admission of the CNER

11 into evidence is a blatant attempt by the government to circumvent its discovery obligations under Brady,

12 Giglio and the Jenks Act. See Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150

13 (1972), 18 U.S.C. § 3500 *et seq*. If the declarant were to appear at trial to testify, Mr. Gonzalez-Sanchez would

14 undoubtedly be entitled to discovery material, including impeachment evidence against the declarant, her own

15 prior statements, and certain other documents (in addition to being entitled to exercise the right of cross-

16 examination).[3]   If the Court does allow the admission of the CNER, Mr. Gonzalez-Sanchez requests

17 production of any and all discoverable material to which he would be entitled were this witness to testify at

18 trial.

19                                  **IX.**

20              **THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER
                   FEDERAL RULES OF EVIDENCE 404(B) AND 609**

21

22 **A.       Exclusion of Other Acts Evidence Under FED. R. EVID. 404(b), 403.**

23        The government carries the burden of showing how any other acts evidence is relevant to one or

24 more issues in the case, and "it must articulate precisely *the evidential hypothesis* by which a fact of

25 consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822,

26 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979))

27

28

---

[3] Additionally, it is unknown if the witness conducted the search of the records herself or
delegated that job to the individual who actually signed the document.

1  (emphasis added); <u>accord United States v. Brooke</u>, 4 F.3d 1480, 1483 (9th Cir. 1993).  Additionally, under

2  the Ninth Circuit's four-part test to determine whether potential 404(b) evidence is admissible the government

3  must show that: (1) the other crime evidence proves a material issue in the instant case; (2) the instant case

4  is similar to the other crime; (3) there is sufficient evidence that the other crime was committed; and (4) the

5  other crime's commission must not be too remote in time. <u>See</u> <u>United States v. Montgomery</u>, 150 F.3d 983,

6  1000-01 (9th Cir. 1998). Finally, as with all other potential evidence, any alleged 404(b) evidence's probative

7  value must substantial outweigh its prejudicial nature. See FED. R. EVID. 403.

8  **B.      The Government Should Be Precluded From Introducing Evidence Of More Than**
   **One Physical Removal From The United States.**
9

10      The government should not be allowed to call a Detention Enforcement Officer to testify about any

11  deportations other than the one sought to be relied upon as an element of the offense.  Such testimony would

12  constitute "other acts" evidence because it informs the jury that Mr. Gonzalez-Sanchez has entered the United

13  States illegally on other occasions; such evidence is accordingly inadmissible under FED. R. EVID. 401,

14  404(b). Any reference to another deportation must be excluded because the jury could base its verdict on an

15  element not set forth in the complaint.

16      Further, the admission of testimony regarding other physical removals would be more prejudicial

17  than probative, as it would make the jury more likely to convict Mr. Gonzalez-Sanchez because it believes

18  he has the propensity to commit crimes rather than because of the evidence presented at trial. <u>See</u> U.S. CONST.

19  AMEND. V, VI (entitling defendant to fundamental fairness, due process, and a fair trial); FED. R. EVID. 403.

20  It is also a waste of time and cumulative because the Government need only prove that Mr.  Gonzalez-

21  Sanchez was physically deported from the United States on one occasion.  FED. R. EVID. 403.

22      Although the government must prove that Mr. Gonzalez-Sanchez physically departed the United

23  States, 8 U.S.C. § 1326(a), it need only establish one physical departure. This Court should preclude the

24  government from introducing evidence of more than one physical removal from the United States. Instead,

25  the government should have to elect which physical removal it intends to rely at trial.

26  **C.      Exclusion Of Prior Convictions To Impeach Witness Under Rule 609.**

27      FED. R. EVID. 609 precludes use of prior convictions to impeach a witness. The discovery material

28  makes reference to prior criminal convictions. The government should be precluded from introducing any

1 evidence of these convictions, as they are irrelevant under FED. R. EVID. 401 and prejudicial under FED. R.

2 EVID. 403. Many of the prior offenses fail to make the existence of any fact that is of consequence more or

3 less probable, or have any relevance to any element of the present charge against Mr. Gonzalez-Sanchez.

4 Even if Mr. Gonzalez-Sanchez were to testify at trial, the danger of unfair prejudice would substantially

5 outweigh any possible relevance of any of his prior offenses.  FED. R. EVID. 401, 403, 609.

6        To the extent that this Court rules that Mr. Gonzalez-Sanchez's prior convictions are admissible

7 under FED. R. EVID. 609, this Court should redact any documents and preclude the government from referring

8 to the crime for which Mr. Gonzalez-Sanchez was convicted, as it would be more prejudicial than probative

9 of his guilt of the charged offense.

10                                         **X.**

11              **THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE**

12        Pursuant to the Fifth and Sixth Amendments and FED. R. CRIM. P. 24(a), Mr. Gonzalez-Sanchez

13 requests that his defense counsel have the opportunity to personally voir dire the prospective jury members.

14 Individual voir dire assists defense counsel in providing effective assistance of counsel, in assuring that Mr.

15 Gonzalez-Sanchez has an impartial and qualified jury, and in assisting him in the intelligent exercise of

16 peremptory challenges.  See Rosales-Lopez v. United States, 451 U.S. 182, 187 (1981) (holding that "lack

17 of adequate voir dire impairs the defendant's right to exercise peremptory challenges where provided by

18 statute or rule, as it is in the federal courts"); Paine v. City of Lompoc, 160 F.3d 562, 564 (9th Cir. 1998)

19 (stating that "voir dire ought to be adequate to assure an impartial jury, by enabling the parties intelligently

20 to exercise their challenges"); Darbin v. Nourse, 664 F.2d 1109, 1113 (9th Cir. 1981) ("[A] voir dire

21 examination must be conducted in a manner that allows the parties to effectively and intelligently exercise

22 their right to peremptory challenges and challenges for cause.") (footnote omitted). Defense counsel requests

23 a brief period during which she may ask questions to supplement this Court's general voir dire.

24                                         **XI**.

25          **THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS**

26        The Court should order production of grand jury transcripts if a witness who likely will testify at the

27 trial of Mr. Gonzalez-Sanchez also is likely to have testified before the grand jury. Dennis v. United States,

28 384 U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3).  The defense requests that the government make such

1  transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any

2  need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule

3  of Criminal Procedure 26.2(d).

4                                                    **XII.**

5              **THIS COURT SHOULD PRECLUDE THE GOVERNMENT FROM USING
                          ANY DOCUMENTS FROM THE A-FILE**

6

7  **A.     The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish
           the Fact of the Deportation, *Not* Alienage**

8

9          Mr. Gonzalez-Sanchez expects that the government will seek to introduce a warrant of deportation

10  and an order of deportation to establish the fact of his alleged deportation.  These two documents are

11  admissible *only* to establish the fact of the deportation.  See, e.g., United States v. Contreras, 63 F.3d 852, 857

12  (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980).  Neither the warrant

13  of deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly,

14  neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage.

15         Both the warrant of deportation and the order of deportation reflect the ministerial fact of the

16  *deportation*, not Mr. Gonzalez-Sanchez's alleged alienage.  As the Ninth Circuit has explained:

17         **Clearly it would be improper for the government to rely on factual findings from a
           deportation hearing to prove an element of the crime of illegal reentry, as the burden
           of proof in a criminal proceeding requires a greater showing by the government than
18         in an administrative hearing.**  The use of a deportation order to prove the element of
           alienage would allow the government to skirt around the more stringent requirements of
19         a criminal proceeding by relying on that factual finding from the INS proceeding.  To put
           it more simply, the government would demonstrate that Medina is an alien by showing that
20         the INS found that he was an alien.

21  United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added).  Simply put, alienage

22  is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing, and

23  the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing.

24  Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Gonzalez-Sanchez

25  to be an alien after an administrative hearing, and that Mr. Gonzalez-Sanchez may have been removed from

26  the United States after that deportation—it has no bearing whatsoever on the fact of alienage.  Accordingly,

27

28

1  the warrant of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8)

2  or Federal Rule of Evidence 401 to establish the fact of alienage.[4]

3          Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of

4  Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because

5  their probative value is substantially outweighed by their prejudicial effect.  Both the order of deportation and

6  warrant of deportation make reference to an "alien;" even more troubling, in the context of these documents,

7  the term "alien" is associated *with* Mr. Gonzalez-Sanchez, who presumably is the "alien" to which the

8  documents refer.  In the face of these quasi-official government documents proclaiming Mr. Gonzalez-

9  Sanchez to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C.

10 § 1326 as an open question that the government must prove beyond a reasonable doubt.

11         Should the Court nonetheless admit these documents, Mr. Gonzalez-Sanchez requests that this Court

12 instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of

13 deportation and the order of deportation to establish the fact of the deportation and for no other purpose, and

14 that these documents do not, in and of themselves, establish the fact of alienage.  Mr. Gonzalez-Sanchez

15 further requests that this Court redact these documents to exclude any reference to his alleged alienage.

16 **B.      None of the Other A-File Documents Are Admissible By the Government Under Any Rule of
        Evidence.**

17

18         Mr. Gonzalez-Sanchez anticipates that the government may seek to admit other documents from the

19 A-file, including the notice to appear/order to show cause why a person should not be deported and warnings

20 regarding the possible penalties for reentry.  None of these documents from the A-file are admissible by the

21         [4]      In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001),

22 the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of
   Evidence 803(8)(B) to establish the fact of alienage.  Because the court failed to set forth any

23 reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents
   from the A-file were admitted in Mr. Hernandez-Herrera's case, see id., this case is not binding

24 authority, and this Court must still address this issue.  See, e.g., Miranda B. v. Kitzhaber, 328 F.3d
   1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion"

25 for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4
   (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned

26 analysis and analogous facts").  In any event, Hernandez-Herrera never held that these documents

27 were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth Amendments.
   See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the

28 record, neither brought to the attention of the court nor ruled upon are not to be considered as having
   been so decided as to constitute precedent").

1  government to establish any matter at issue in this trial.  All documents from the A-file—except the warrant

2  of deportation and the order of deportation discussed previously—are irrelevant under Federal Rule of

3  Evidence 401; more prejudicial than probative, cumulative, and a waste of time under Federal Rule of

4  Evidence 403; and inadmissible hearsay under Federal Rule of Evidence 803(8).

5       **1.     The Notice to Appear Is Inadmissible.**

6       The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8).  The

7  Notice to Appear is a document that provides an alien with *notice* of the grounds for removal.  It does not

8  record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides

9  an objective observation that a person committed a crime.  This document is nothing more than an *accusation*

10  that the government must prove in an immigration proceeding.

11       **2.     The Warnings of Possible Penalties Is Inadmissible.**

12       Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401,

13  403, and 803(8).  The warning of possible penalties contains boilerplate statements (drafted by the former

14  INS) regarding the penal consequences to an alien who illegally reenters the country.  It has no bearing on

15  whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This

16  document contains inadmissible hearsay, and is completely irrelevant.  It is also more prejudicial than

17  probative.  Among other things, given the serious consequences listed on the warning of possible penalties,

18  jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry;

19  needless to say, such speculation is completely irrelevant to the charge at hand and could be severely

20  prejudicial.  Accordingly, the warnings of possible penalties also must be excluded at trial.

21       **3.     If this Court Finds That These Documents Are Somehow Relevant, They Are Not
22       Admissible to Establish Alienage; Thus, This Court Should Provide the Jury With a
        Limiting Instruction.**

23       To the extent that this Court finds any A-file document relevant to some point, the document is not

24  admissible to establish Mr. Gonzalez-Sanchez's  alienage.  Accordingly, this Court should redact these

25  documents to exclude all references to alienage.  Additionally, the Court should instruct the jury as to the

26  limited value of such documents pursuant to Federal Rule of Evidence 105.

27  //

28  //

1  **C.**    **This Court Must Preclude the Admission of the A-File Documents to Establish Alienage to**

2        **Protect Mr. Gonzalez-Sanchez's Constitutional Rights.**

3        Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage

4  to protect Mr. Gonzalez-Sanchez's  rights to confrontation of witnesses and to a jury trial based upon proof

5  beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments.  Because the right to

6  confrontation is not applicable in immigration proceedings, the government may have met its burden of

7  proving alienage in such a proceeding based upon otherwise inadmissible hearsay.  <u>Cunanan v. INS</u>, 856 F.2d

8  1373, 1374 (9th Cir. 1988).  Similarly, because a criminal defendant such as Mr. Gonzalez-Sanchez never

9  has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may

10  have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to

11  confront the witnesses against him.

12        Additionally, in immigration proceedings, the government need only establish alienage by clear and

13  convincing evidence.  <u>Murphy v. INS</u>, 54 F.3d 605, 608-610 (9th Cir. 1995).  Once the government has

14  established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance

15  of the evidence, that he falls within one of the statutory provisions for derivative citizenship.  <u>Id.</u>  Given the

16  lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal

17  defendant to establish the fact of alienage has the effect of lowering the government's burden of proving

18  alienage in the criminal trial.

19        Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence

20  of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight

21  or conclusive effect.  <u>Cf. Nipper v. Snipes</u>, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted)

22  (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge,

23  they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'");

24  Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe to assume that

25  the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory

26  explanation").  The government's introduction of a government agency's finding of alienage to establish the

27  fact of alienage carries with it the imprimatur of governmental, if not judicial, approval.  The admission of

28

1  this factual finding undermines a defendant's constitutional right to a reliable jury finding of an essential

2  element.

3          In sum, because the A-file documents are generated by the government without the constitutional

4  safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize

5  their admission, as evidence of alienage, in a criminal prosecution.  This Court should exclude these

6  documents in their entirety; or, to the extent the Court finds that these documents are admissible to prove

7  some other fact, it should redact these documents to exclude reference to Mr. Gonzalez-Sanchez's alienage

8  and instruct the jury as to the documents' limited relevance.

9                                              **XIII.**

10  **THIS COURT SHOULD PRECLUDE THE ADMISSION OF AN AUDIO-TAPE OR**
    **TRANSCRIPT OF THE DEPORTATION HEARING**

11

12          The Court must exclude any deportation hearing audiotape or transcript because they would contain

13  un-<u>Mirandized</u> statements made by Mr. Gonzalez-Sanchez in response to custodial interrogation.  Questions

14  asked in a custodial setting constitute interrogation if, under all the circumstances, the questions are

15  "reasonably likely to elicit an incriminating response from the suspect." <u>United States v. Booth</u>, 669 F.2d

16  1231, 1237 (9th Cir. 1981) (citing <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980)).  In <u>Mathis v. United</u>

17  <u>States</u>, 391 U.S. 1 (1968), the Supreme Court held that the defendant's statements to a revenue agent who was

18  conducting a routine tax investigation were the product of custodial interrogation within the meaning of

19  <u>Miranda</u> despite the fact that the agent's questioning was part of the routine tax investigation where no

20  criminal proceedings could have even been brought and the defendant was in jail on an entirely separate

21  offense. <u>Id.</u> at 4.  The Court stated that "[t]hese differences are too minor and shadowy to justify a departure

22  from the well-considered conclusions of <u>Miranda</u> with reference to warnings to be given to a person held in

23  custody." <u>Id.</u>

24          In the immigration context, this Court has stated: "[i]f civil investigations by the INS were excluded

25  from the <u>Miranda</u> rule, INS agents could evade that rule by labeling all investigations as civil. Civil as well

26  as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by

27  the <u>Miranda</u> warnings."  <u>United States v. Mata-Abundiz</u>, 717 F.2d 1277, 1279 (9th Cir. 1983). In <u>Mata-</u>

28  <u>Abundiz</u>, an INS investigator interviewed the defendant at a local jail, where he was being held on state

1  charges, as part of a routine civil investigation without a prior <u>Miranda</u> advisement. In a subsequent federal

2  prosecution for possession of a firearm by an alien, the district court permitted the government to introduce

3  the defendant's statement to the INS investigator concerning his Mexican citizenship.  This Court reversed

4  the defendant's conviction recognizing that "the investigator cannot control the constitutional question by

5  placing a 'civil' label on the investigation." <u>Id.</u> at 1280.

6      Moreover, the Ninth Circuit in <u>Mata-Abundiz</u> rejected the government's argument that the

7  questioning fell within the exception to the <u>Miranda</u> requirements for routine background questioning

8  attendant to arrest and booking. <u>See</u> <u>United States v. Booth</u>, 669 F.2d at 1237-38. In <u>Booth</u>, the court of

9  appeals stated: "Ordinarily, the routine gathering of background, biographical data will not constitute

10 interrogation. Yet we recognize the potential for abuse by law enforcement officers who might, under the

11 guise of seeking 'objective' or 'neutral' information, deliberately elicit an incriminating statement from a

12 suspect." <u>Booth</u>, 669 F.2d at 1238.  The Court applied this objective test to <u>Mata-Abundiz</u> and found that the

13 "background questions" related directly to an element of the offense to which the defendant was suspected

14 and the questions were likely to elicit an incriminating response.  <u>Mata-Abundiz</u>, 717 F.2d at 1280.

15     Like the questioning in <u>Mathis</u> and <u>Mata-Abundiz</u>, the questioning by the immigration judge in this

16 case was "reasonably likely to elicit an incriminating response" within the meaning of <u>Booth</u>. All of Mr.

17 Gonzalez-Sanchez's statements were made in response to direct questioning by government officials.  The

18 questioning concerned Mr. Gonzalez-Sanchez's place of birth, citizenship, and manner of entry into the

19 United States.  Federal law provides for criminal penalties to aliens who illegally enter the United States, <u>see</u>

20 8 U.S.C. § 1325, and to aliens who illegally reenter the United States following deportation, <u>see</u> 8 U.S.C. §

21 1326.

22     In <u>United States v. Solano-Godines</u>, 120 F.3d 957, 961 (9th Cir. 1997), the government brought

23 criminal charges against the defendant, Mr. Solano, for illegal reentry after a deportation.  <u>Id.</u> at 959.  Two

24 years before, Mr. Solano appeared at a civil deportation hearing at which he made statements about his place

25 of birth and citizenship.  <u>Id.</u> Mr. Solano was not given <u>Miranda</u> warnings prior to making these statements.

26 <u>Id.</u>  Prior to trial, Mr. Solano filed a motion to suppress the statements at his deportation hearing.  <u>Id.</u> at 960.

27 The district court denied the motion and Mr. Solano entered a conditional plea agreement.  <u>Id.</u>  On appeal,

28 the Ninth Circuit held that <u>Miranda</u> warnings were not required in that case because the immigration judge

1  "could not be expected to anticipate that two years later Solano would illegally reenter the United States and

2  that his responses to questions at his civil deportation hearing might incriminate him in a prosecution for this

3  future crime." Id. at 962.

4       The Ninth Circuit's holding and reasoning in Solano-Godines is inapplicable to this case.  In

5  particular, any statements made at any immigration hearings *after* he had already been previously deported

6  or removed from the United States should be excluded because Mr. Gonzalez-Sanchez's responses to the

7  immigration judge could have subjected him to criminal prosecution at that time, not some unknown time in

8  the future.  For that reason, the immigration judge should have advised him of his rights under Miranda.

9  Because Mr.  Gonzalez-Sanchez's admission were made without the benefit of Miranda warnings, and

10  because he was affirmatively misled as to the consequence of making statements, his statements at the

11  deportation hearing must be excluded.  See United States v. Alderete-Deras, 743 F.2d 645, 648 (9th Cir.

12  1984) (noting that the lack of Miranda warnings at a civil deportation hearing might render statements made

13  at the hearing inadmissible in a subsequent criminal trial).

14                     **XIV.**

15      **THE GOVERNMENT MUST BE PRECLUDED FROM INTRODUCING**
    **EVIDENCE OF A REINSTATEMENT OF DEPORTATION**

16

17       The Ninth Circuit, sitting *en banc*, recently decided Morales-Izquierdo v. Gonzales, 477 F.3d 691

18  (9th Cir. 2007) (en banc). Morales-Izquierdo reasoned "that reinstatement and removal are placed in different

19  sections, which logically can be understood as indicating a congressional intention to treat reinstatement

20  determinations differently from first-instance determinations of removability." See Morales-Izquierdo, 477

21  F.3d at 697. (quotation marks omitted). Because "Congress placed reinstatement in a separate section from

22  removal suggests that reinstatement is a separate procedure, not a species of removal," id., the *en banc* panel

23  concluded that "Congress intended reinstatement to be a different and far more summary procedure than

24  removal." Id.; see also United States v. Luna-Madellaga, 315 F.3d 1224, 1231 (9th Cir. 2003)(Thomas, J.,

25  dissenting) (stating that the "reinstatement process neither issues an order of removal nor considers new

26  evidence that occurred after the date of the original order."). Put simply, Morales-Izquierdo held "Congress

27  did not consider removal and reinstatement to be equivalent. Id. In fact, Morales-Izquierdo specifically

28  rejected the notion that a reinstatement can result in new criminal penalties: "[t]he reinstatement order

1  imposes no civil or criminal penalties." <u>See</u> 477 F.3d at 704.  <u>See also</u> <u>Luna-Madellaga</u>, 315 F.3d at 1231-32

2  (Thomas, J., dissenting) (explaining why a contrary result would be constitutionally doubtful).  Moreover,

3  as the Ninth Circuit previously has stated  'the government . . . needs to prove that a deportation proceeding

4  actually occurred with the end result of [the defendant] being deported.' <u>United States v. Medina</u>, 236 F.3d

5  1028, 1031 (9th Cir. 2001)).  Thus, to prove a previous deportation the government must establish that a

6  deportation proceeding occurred as the defendant and as a result a warrant of deportation was issued and

7  executed by the removal of the defendant from the United States.  Therefore, the government should not be

8  permitted to admit evidence of any reinstatements.

9  **XV.**

10  **THE COURT SHOULD EXCLUDE THE GOVERNMENT'S CASE AGENT**

11          The Court may not exclude "a person whose presence is shown by a party to be essential to the

12  presentation of the party's case" during a trial.  FED. R. EVID. 615(3). The government will not be able to

13  show that its case agent is such a person. Traditionally, witnesses such as case agents do not participate in

14  the arrest or investigation of deported alien cases other than to request and temporarily keep the accused's

15  immigration "A" file.  The government will use the case agent as nothing more than a custodian to lay a

16  foundation for the

17  admission of certain documents it considers relevant.  The Court should treat this witness as any other witness

18  in this case and exclude him or her from trial.

19  **XVI.**

20  **THIS COURT SHOULD PRECLUDE THE A-FILE CUSTODIAN FROM**

21  **TESTIFYING ABOUT IMMIGRATION PROCEEDINGS**

22          Under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and

23  confrontation of witnesses. Evidence must also be relevant and not create confusion or be prejudicial.

24  FED. R. EVID. 401, 403.  In addition, no lay witness is permitted to offer an opinion or testify about

25  specialized knowledge.  FED. R. EVID. 702, *et seq*.; <u>United States v. Figueroa-Lopez</u>, 125 F.3d 1241, 1245

26  (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be based upon

27  knowledge which would be "unfamiliar" to "the ordinary juror").

28          In this case, defense counsel expects that the government will call the A-file custodian to

17

07CR3400-JAH

1  establish the foundation for the admission of selected documents from Mr. Gonzalez-Sanchez's A-file.  It

2  is also expected that the Government will ask the A-file custodian how immigration proceedings work.

3  Such testimony is inadmissible under FED. R. EVID. 401, 403, 702, 802, and its admission would violate

4  Mr.  Gonzalez-Sanchez's rights to a fair trial and confrontation of witnesses under the Fifth and Sixth

5  Amendments.  For example, it is unlikely that the A-file custodian has participated in deportation

6  proceedings as either an immigration judge or an immigration attorney, and thus, he would not be

7  testifying from his own personal knowledge, but from the hearsay statements of other people, who were

8  not presented for cross-examination by Mr. Gonzalez-Sanchez. Thus, this Court should preclude the A-

9  file custodian from testifying about how immigration proceedings work and about the significance of such

10  documents. Rather, the A-file  custodian's testimony should be limited to laying a foundation for the

11  admission of the A-file documents.[5]

12  ### XVII.

13  ### THIS COURT SHOULD ALLOW EACH JUROR TO HAVE
    ### A SEPARATE COPY OF THE APPROVED JURY INSTRUCTIONS

14

15  Juries consist of lay people who are required to follow the law.  Their responsibility becomes

16  more difficult when all twelve jurors have access to only one copy of the instructions.  Often, each juror

17  does not have an opportunity to even read or understand the critical instructions.  Consequently, jurors

18  fail to understand the government's burden of proving a case beyond a reasonable doubt and the

19  defendant's constitutional right not to testify and present evidence in his own defense.

20  In this case, there are *many* elements the Government must prove to convict Mr. Gonzalez-

21  Sanchez of an actual violation of 8 U.S.C. § 1326.  Although this Court will instruct the jury on each of

22  these elements, each juror also should be provided a written copy of the jury instructions, so that each

23  juror may properly, effectively, and efficiently perform his or her function of determining whether the

24  government has proven each element beyond a reasonable doubt.[6]

25  _____

26  [5] Mr.  Gonzalez-Sanchez has argued above that the A-file documents are inadmissible under
    the FED. R. EVID. and the Constitution.

27

28  [6] Mr. Gonzalez-Sanchez is willing to pay the costs for the additional copies of the jury
    instructions.

## XVIII.

### THE COURT SHOULD NOT SEND THE INDICTMENT
### INTO THE JURY ROOM DURING DELIBERATIONS

In the commentary to Model instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the Indictment not be sent into the jury room during deliberations. The commentary observed that neither the FED. R. CRIM. P. nor case law require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Gonzalez-Sanchez urges this Court to follow the Committee's guidance. The language in the instant indictment "tracks" the language of the charged statutes. Accordingly, it is probable that jurors will be persuaded by the similarities alleged in the indictment returned by the grand jury and the elements which must be proven in the charged statutes. Furthermore, the indictment recites that "the grand jury charges," and this could persuade those jurors without experience with the grand jury system that another jury had already found Mr. Gonzalez-Sanchez guilty. Should the Court deny Mr. Gonzalez-Sanchez's request to exclude the indictment from the jury room during deliberations, Mr. Gonzalez-Sanchez requests that this Court caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-52 (9th Cir. 1989).

## XIX.

### ANY PROFFERED EXPERT WITNESSES MUST FIRST BE QUALIFIED
### BY THE COURT AFTER A HEARING

If the Court is inclined to allow the government to introduce expert testimony, Mr. Gonzalez-Sanchez submits that a separate hearing is required to determine the reliability of the expert testimony proposed. Prior to allowing any such testimony, however, this Court should inquire as to this witness' "knowledge, skill, experience, training, or education." See FED. R. EVID. 702 and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

The Supreme Court has also recognized that the factors to be considered in this context that are set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), certainly "do not constitute a definitive checklist or test." Kumho Tire, 526 U.S. at 150 (citing Daubert, 509 U.S. at 591) (internal

1  quotations and citations omitted). Thus, the Court should not limit its inquiry simply to whether the proffered

2  expert opinions have: (1) "been tested," Id. at 593; (2) "been subjected to peer review and publication," Id.;

3  (3) a "known or potential rate of error," Id. at 594; (4) earned "general acceptance," Id.; (5) "experience-based

4  methodology [that] has produced erroneous results," see Kumho Tire, 526 U.S. at 151; and (6) a factual basis

5  "of a kind that others in the field would recognize as acceptable" Id.  Instead, this Court should undertake its

6  own independent inquiry as to the reliability of the government's experts prior to admitting such testimony.

7  As Kumho Tire makes clear, the reliability of a "particular matter to which the expert testimony [is] directly

8  relevant" is an absolute condition precedent to its admissibility. Kumho Tire, 526 U.S. at 153-54.  Absent this

9  inquiry, any expert opinions proffered by the government simply cannot be introduced.

10

**XX.**

11

**THIS COURT SHOULD PRECLUDE ANY REFERENCE TO 9/11 AND
THE ALLEGED "WAR AGAINST TERRORISM"**

12

13       Since September 11, 2001, immigration issues and terrorism have been thrust to the forefront of

14  America's collective consciousness. The increasing "war on terrorism" and the desire for security must not

15  be played upon to somehow dilute the government's burden of proof in this border case.  In particular,

16  prosecutors and government witnesses should not be allowed to imply that more deference to their judgment

17  is appropriate, as they are charged with protecting "the Homeland" from terror.

18       This testimony and argument is simply inadmissible under FED. R. EVID. 401, 402 and 403.

19  Terrorism or the tragic events that occurred in New York, Washington, D.C., and elsewhere have absolutely

20  nothing to do with this case. It is irrelevant, inflammatory, and  highly prejudicial.  Therefore, the Court

21  should preclude such argument or testimony in this trial.[7]

22

**XXI.**

23

**REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

24       As new information surfaces due to the Government providing discovery in response to these

25  motions, those previously filed, or an order of this Court, the defense may need to file further motions.

26  ————————————————

27       [7] Mr. Gonzalez-Sanchez also would object and move to preclude the government from any
attempts to appeal to juror's post-9/11 patriotism, such as referring to itself as the "United States,"

28  and utilizing the colors red, white, and blue on its jury instructions and charts.

1  Therefore, defense counsel requests the opportunity to file further motions.

2                                          **XXII.**

3                                     **<u>CONCLUSION</u>**

4          For the foregoing reasons, Mr. Gonzalez-Sanchez respectfully requests that this Court grant the

5  above requested motions.

6                                                          Respectfully submitted,

7

8  DATED:  May 5, 2008                              */s/ Jennifer L. Coon*
                                                    **JENNIFER L. COON**
9                                                   Federal Defenders of San Diego, Inc.
                                                    Attorneys for Mr. Gonzalez-Sanchez
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

        Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

        Courtesy Copy Court

        Assistant United States Attorney via ECF

Dated: May 5, 2008

                    ___/s/  Jennifer L. Coon_____
                    JENNIFER L. COON
                    Federal Defenders of San Diego, Inc.
                    225 Broadway, Suite 900
                    San Diego, CA 92101-5030
                    (619) 234-8467  (tel)
                    (619) 687-2666  (fax)
                    e-mail: Jennifer_Coon@fd.org